### (March 7, 1963)

■ In the Matter of the Accounting of MILTON DAMMANN et al., as Surviving Trustees under a Trust Created for MABEL K. TRITSCH, by JOSEPHINE V. KAUFMAN. MARJORIE T. JACOBS, Appellant; RETA W. DAMMANN et al., as Executors of MILTON DAMMANN, Deceased Trustee, et al., Respondents.

*Per Curiam.* Appellant, a remainderman of a terminated *inter vivos* trust, objects to attorneys' fees allowed the law firm with which the individual cotrustee was associated. As finally allowed, two fees are involved: a $750 fee for services rendered during the accounting period, and a $2,250 fee for services rendered upon the accounting proceeding. Also involved is the valuation date upon which certain principal commissions are to be computed. The issues raised by appellant, and other remaindermen, had been referred by Special Term to a private Referee.

The assets of the trust consisted of shares of stock in the American Safety Razor Company, such shares being a nonlegal investment the trustees were conditionally required by the trust indenture to retain. The indenture further provided that such stock, or stock in any successor or merged corporation, was not to be sold without the consent of the individual trustees. The indenture also had a general clause authorizing the trustees to consent to a merger, consolidation, or reorganization, and to make any exchange of securities resulting therefrom. The legal services rendered during the accounting period were in connection with a proposed exchange of the American Safety Razor stock for the shares of Phillip Morris, Inc., pursuant to some sort of merger or consolidation. The corporate cotrustee did not request the services in question; indeed, it apparently was not aware that advice was being procured, or of the conclusion eventually reached, until well after the exchange of securities had taken place and the trust had terminated. The private Referee noted that the question upon which the surviving individual trustee had apparently sought advice was essentially one of business judgment, rather than a legal one. Consequently, there is insufficient basis to support a fee for legal services for which the trust may be burdened.

The second attorneys' fee objected to by appellant remainderman is in connection with the accounting proceeding. An informal accounting was prevented by the parties' inability to agree upon attorneys' fees. The private Referee awarded $2,250, covering also the legal services rendered in connection with the reference itself.

There is cogency to appellant's argument that the reference was unnecessary (*Matter of Wilder* v. *Straus-Duparquet*, 5 A D 2d 1; *Wolfson* v. *McGraw & Co.*, 18 A D 2d 2). However, in the absence of an intermediate appeal, and on this record of vigorous adversary representation, the reference should not be vacated at this stage (cf. *Matter of Vogue Pleating Co.*, 11 A D 2d 358, 360, involving an assignment for the benefit of creditors, over which the courts have a particular responsibility for supervision).

However, the attorneys' fee awarded was too high in light of all the circumstances, including the doubtful necessity of the reference. The trust contained but one asset, the trustees' transactions during the accounting period were few and simple, and the account was largely prepared by the corporate cotrustee. A fee of $1,000 would seem ample.

A further question is raised regarding the paying-out commissions awarded the trustees. Although the trust indenture provided that the amount of trustees' paying-out commissions should be based on the market value of the corpus at the time of the termination of the trust, the trustees chose a "mean" between the date the trust actually terminated and the date the assets were distributed. The security which was the corpus of the trust appreciated between the date the trust terminated and the date which the trustees chose as a "mean". If the settlor used "termination" in the trust indenture to mean something different than its ordinary trust usage, the trustees would have the burden of establishing that. Although, in fact, the custom was not established, the question is not what fiduciaries customarily do, but the proper construction of the trust indenture.

Accordingly, the order entered March 1, 1962, settling the trustees' account, should be modified, on the law and the facts and in the exercise of discretion, to eliminate the $750 attorneys' fee allowed for services rendered during the accounting period, and to reduce the $2,250 attorneys' fee allowed for services rendered upon the accounting proceeding to $1,000, and such order should be further modified, on the law and the facts, to reduce the total trustees' commissions for paying out principal to $5,860.68, and should be otherwise affirmed, without costs to any party. Settle order.

Breitel, J. P., Rabin, Valente, Eager and Bergan, JJ., concur.

Order, entered on March 1, 1962, settling the trustees' account, unanimously modified, on the law and the facts and in the exercise of discretion, to eliminate the $750 attorneys' fee allowed for services rendered during the accounting period, and to reduce the $2,250 attorneys' fee allowed for services rendered upon the accounting proceeding to $1,000, and such order is further modified, on the law and the facts, to reduce the total trustees' commissions for paying out principal to $5,860.68, and otherwise affirmed, without costs to any party. Settle order on notice.